UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

RAYMONE MOORE,  )
 )
  PLAINTIFF,  )
 )  CASE NO.
 VS.  )
 )
STEJOCA, INC., dba McDONALD'S,  )  HON.
 )
  DEFENDANT.  )
 )
 )
 )

## COMPLAINT

PLAINTIFF RAYMONE MOORE, by and through his attorneys, CARLA D. AIKENS, P.L.C., submits the following Complaint against STEJOCA, INC.

## JURY DEMAND

COMES NOW PLAINTIFF, Raymone Moore and hereby makes his demand for trial by jury.

## JURISDICTION

1. At all times relevant to this complaint, Plaintiff Raymone Moore was a resident of Kalamazoo County in the State of Michigan.

2. Defendant Stejoca, Inc. dba McDonald's is an owner of nearly a dozen McDonald's restaurants in the State of Michigan.

3. Defendant maintains a place business in Kalamazoo County in the State of Michigan.

4. The events in question took place in Kalamazoo County.

5. This court has jurisdiction over these claims on the basis of federal question jurisdiction pursuant to title 7 Civil Rights Act of 1964, 42 USC sec.2000 9-16, and the state claims by

supplemental jurisdiction through 28 USC sec. 1367 et seq.

## VENUE

6. Venue is proper in this Court, the Western District of Michigan, pursuant to sec. 706 d3 of Title 7 42 USC sec. 2000e-5(f)(3) 5c, because the unlawful employment discrimination occurred in this district.

## STATEMENT OF FACTS

7. Plaintiff is an African American man.

8. Sometime around December 2022, Plaintiff's work location underwent a transition of ownership.

9. During this time, Plaintiff raised concerns with the new Owner, Stephen Hogwood, and the Director of Operations, Dennis Solodon, regarding his pay.

10. Plaintiff informed Defendant that he was not being compensated fairly based on the assigned duties and responsibilities he had.

11. Plaintiff was instructed to send an email to Stephen Hogwood, formally stating the salary he was requesting.

12. As a result, Defendant was told by Dennis Solodon to just focus on the duties of a General Manager.

13. On or around January 3, 2023, Plaintiff's son was hospitalized and began to experience major health concerns.

14. Around this time, Plaintiff was also assigned a new Supervisor, Raymond Lopes, who was supposed to help Plaintiff with staffing.

15. On or around February 15, 2023, Plaintiff's store began construction on site.

16. On this day, a Supervisor, Michelle Perusse, visited the store to conduct an unannounced walkthrough/assessment.

17. Due to illness, Plaintiff was not at the store when Michelle Perusse visited.

18. After her visit, Michelle Perusse sent out a report stating at the very end that she would like to start grooming someone to replace Plaintiff.

19. After reviewing the report, Plaintiff disagreed with the majority of the statements and findings.

20. Plaintiff replied to the email to provide clarity, context, and to correct some of the findings in the report from Michelle Perusse.

21. On or around March 8, 2023, Plaintiff's store passed their corporate visit and assessment, which was discussed in the upper management group chat.

22. The next day, March 9, 2023, Dennis Solodon sent a text in the upper management chat informing Plaintiff that he was lucky the store passed because if they failed, Plaintiff would be on unpaid suspension.

23. Plaintiff was shocked and confused because he never heard of unpaid suspension prior, and upon information and belief, other stores had failed and there was not a discussion regarding unpaid suspension.

24. Subsequently, Plaintiff was given a new Manager, Tiara Lawrence, who was experiencing disciplinary issues at previous stores.

25. About a week later, Plaintiff's supervisor was changed to "Chris."

26. When Chris saw Tiara Lawrence, he made a comment about not being able to get rid of her and told Plaintiff about her previous behaviors and issues.

27. Plaintiff transferred Tiara to a different location, where she was fired within a week.

28. In April 2023, Plaintiff was assigned a new supervisor via text whose name was Michelle Perusse.

29. Plaintiff had reservations about Michelle Perusse being the supervisor due to the previous negative experience, but he remained cordial and open to working with her.

30. On or around April 15, 2023, Perusse told Plaintiff that she needed help cleaning a different store, to which Plaintiff not only agreed to send help, he drove the additional help to Perusse.

31. The air conditioning in the store was malfunctioning, resulting in the store being over ninety degrees which was impacting Plaintiff's asthma.

32. Due to the issue, Plaintiff started a breathing treatment while at work but it did not provide relief.

33. On or around April 16, 2023, Plaintiff went to work despite not feeling well.

34. Upon arrival, Perusse informed Plaintiff that she needed additional help again.

35. Plaintiff was not able to provide additional help this time as he only had 3 employees in and he was not feeling well.

36. On or around April 17, 2023, Perusse sent out a text message stating that if anyone received three write-ups, they would be terminated.

37. On or around April 18, 2023, Perusse presented Plaintiff with a write-up due to "weekend performance."

38. Plaintiff objected, stating he did not think it was fair as he was sick and he was understaffed due to her request for additional help.

39. Despite his objections, Plaintiff signed the write-up.

40. Immediately after Plaintiff signed the write-up, Perusse presented Plaintiff with another write-up because an employee, Kirk Hradsky, was sleeping in the shed.

41. Perusse informed Plaintiff that he put the company at risk for a lawsuit, so he was being terminated.

42. Plaintiff had no knowledge about Hradsky sleeping in the shed, as there were no cameras in that area.

43. Upon information and belief, Hradsky was not terminated for sleeping in the shed.

44. Upon information and belief, Plaintiff's non-Black counterparts were treated better than him and not written up, transferred around, nor terminated for the same or similar conduct.

45. Plaintiff submits that Defendant was pushing him out as a result of his race, raising concerns regarding his pay, and voicing objections regarding the reports made about his store.

46. Plaintiff received his right to sue notice from the EEOC on January 22, 2024.

47. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT I

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e et seq. ("Title VII")**

48. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

49. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, Title VII, as amended.

50. Defendants' conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or association with a particular race.

51. Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to Title VII.

52. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

53. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

54. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

55. As a proximate result of the Defendant's discriminatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

56. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proven at trial.

57. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT II

**DISCRIMINATION ON THE BASIS OF RACE IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT, MCL 37.2101 et seq. ("ELCRA")**

58. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

59. At all material times, Defendant was an employer and Plaintiff was an employee covered by, and within the meaning of, ELCRA.

60. Defendants' conduct, as alleged herein, violated the ELCRA, which makes it unlawful to harass or discriminate an employee on the basis of that employee's race or skin color, or association with a particular race.

61. Plaintiff is an African American man, and, as a result, is a member of a protected class pursuant to ELCRA.

62. Plaintiff was subjected to offensive communication and/or conduct on the basis of his membership in this protected class.

63. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

64. The unwelcomed conduct and communication was intended to and in fact did substantially interfere with Plaintiff's employment and created an intimidating, hostile, and/or offensive work environment as alleged in the statement of facts.

65. As a direct and proximate result of the Defendant's wrongful acts and omissions, Plaintiffs have sustained loss of earnings, earning capacity, and fringe benefits and have suffered mental anguish, emotional distress, humiliation and embarrassment, and loss of professional reputation.

66. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT III

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. 2000e *et seq*. ("Title VII")**

67. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

68. At all material times, Defendant was an employer and Plaintiff an employee, covered by, and within the meaning of Title VII.

69. Defendant's conduct, as alleged herein, violated Title VII of the Civil Rights Act of 1964, which makes it unlawful to retaliate against an employee for engaging in protected activity.

7

70. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and the authority to direct Plaintiff's daily work activity, as alleged in the statement of facts.

71. Plaintiff engaged in protected activity when he took the following actions, including but not limited to, reporting to Defendant that he felt he was not being compensated fairly compared to counterparts of other races.

72. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were the individuals to whom Plaintiff reported the discrimination.

73. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to terminating him.

74. But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

75. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

76. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

77. As a result of those actions and consequent harms, Plaintiff has suffered such damages in an amount to be proved at trial.

78. Plaintiff requests relief as described in the Prayer for Relief below.

## COUNT IV

### RETALIATION IN VIOLATION OF THE ELCRA

79. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

80. At all material times, Plaintiff was an employee, and Defendant was an employer covered by, and within the meaning of, the ELCRA.

81. Defendant's conduct, as alleged herein, violated the ELCRA, which makes it unlawful to retaliate against an employee who has engaged in protected activity.

82. A respondeat superior relationship existed because Defendant had the ability to undertake or recommend tangible decisions affecting Plaintiff and/or the authority to direct Plaintiff's daily work activity, as alleged throughout this complaint.

83. Plaintiff engaged in protected activity when he took the following actions, including but not limited to, reporting to Defendant that he felt he was not being compensated fairly compared to counterparts of other races.

84. Defendant, through its employees, had knowledge that Plaintiff engaged in protected behavior, because they were the individuals to whom Plaintiff reported the discrimination.

85. Defendant and/or its agents took adverse employment actions against Plaintiff, including but not limited to terminating him.

86. But for Plaintiff's participation in protected activity, Defendant would not have taken said adverse employment actions against Plaintiff.

87. Defendant and its agents' unlawful actions were intentional, willful, malicious and/or done with reckless disregard for Plaintiff's rights.

88. As a proximate result of Defendant's retaliatory actions, Plaintiff has suffered losses in compensation, earning capacity, humiliation, mental anguish, and emotional distress.

## COUNT V

## DISCRIMINATION IN VIOLATION OF 42 USC § 1981

89. Plaintiff hereby incorporates by reference the preceding paragraphs of this Complaint, as if fully set forth herein.

90. 42 USC § 1981 prohibits individuals from engaging in acts of racial discrimination.

91. Defendant's discrimination against Plaintiff as described above is in violation of the rights of plaintiffs afforded them by the Civil Rights Act of 1866, 42 USC § 1981, as amended by the Civil Rights Act of 1991.

92. Plaintiff is a member of a protected class; he is African-.

93. By the conduct described above, Defendant intentionally deprived Plaintiff of the same rights as are enjoyed by non-African American employees to the creation, performance, enjoyment, and all benefits and privileges of their contractual employment relationship with Defendant, in violation of 42 USC § 1981.

94. Defendant's treatment of Plaintiff, as described above, was based at least in part, on the unlawful consideration of his race.

95. Similarly situated non-African American employees were treated better in the terms and conditions of their employment.

96. Agents of Defendant were predisposed to discriminate against Plaintiff based on his race and/or color.

97. The actions of Defendant and its agents were willful, intentional, in deliberate disregard of and with reckless indifference to the rights and sensibilities of Plaintiff.

98. As a direct and proximate result of those actions, the terms, conditions, and privileges of Plaintiff's employment were adversely affected, and Plaintiff was unlawfully terminated.

99. As a direct and proximate result of Defendant's wrongful acts, Plaintiff sustained injuries and damages including, but not limited to, loss of earnings and earning capacity, loss of career opportunities, loss of fringe and pension benefits, outrage and humiliation, mental anguish, anxiety about their future, physical and emotional distress, loss of professional reputation and loss of the ordinary pleasures of everyday life.

## COUNT VI

## WRONGFUL DISCHARGE IN VIOLATION OF MICHIGAN PUBLIC POLICY

100. Plaintiff incorporates by reference all allegations in the preceding paragraphs.

101. It is the longstanding public policy of the State of Michigan that there are three exceptions to the employment at-will doctrine, and an employer can be found to be liable for wrongful discharge. They are:

   a. explicit legislative statements prohibiting the discharge, discipline or other adverse treatment of employees who act in accordance with a statutory right or duty;

   b. where the alleged reason for the discharge was the failure or refusal of the employee to violate a law in the course or employment; and

   c. where the reason for the discharge was the employee's exercise of a right conferred by a well-established legislative enactment.

102. Plaintiff's discharge came as the result of him raising concerns regarding his pay, not agreeing with the report/assessment of his store, and advising Defendant of his health conditions, which it would not accommodate.

103. As a result of Defendant's actions, and consequent harms caused, Plaintiff has suffered such damages in an amount to be proven at trial.

104.   Plaintiff requests relief as described in the Prayer for Relief below.

## **RELIEF REQUESTED**

PLAINTIFF, RAYMONE MOORE, respectfully requests that this Honorable Court enter judgment against Defendant as follows:

1.   Compensatory and pecuniary damages in whatever amount to which Plaintiff is entitled;

2.   Exemplary and/or punitive damages in whatever amount which Plaintiff is entitled;

3.   An award of lost wages and the value of fringe benefits, past and future;

4.   An award of interest, costs, and reasonable attorney fees; and

5.   An order awarding whatever other equitable relief appears appropriate at the time of final judgment.

Dated:  April 18, 2024

                Respectfully Submitted,

                /s/*Carla D. Aikens*
                Carla D. Aikens (P69530)
                CARLA D. AIKENS, P.L.C.
                *Attorneys for Plaintiff*
                615 Griswold Ste. 709
                Detroit, MI 48226
                carla@aikenslawfirm.com
                rejanae@aikenslawfirm.com